Good morning, Your Honors, and may it please the Court, Colin McBeth on behalf of Hans Edling. I'd like to reserve two minutes for rebuttal, and I'll keep track of my time. Your Honor, the District Court enhanced Mr. Edling's sentence on the basis of three prior Nevada convictions for coercion, robbery, and assault with a deadly weapon. None of those offenses qualifies as a crime of violence under the sentencing guidelines, and for that reason remand for resentencing is required. I'd like to start with the coercion statute, which is at NRS 207.190. The parties agree that the coercion statute is divisible as between its felony and misdemeanor versions and that Mr. Edling pled to the felony version of coercion. The dispute in this case, which raises a question of first impression in this Court, is whether felony coercion is overbroad, and if so, whether it is divisible. As we explain in our briefs, felony coercion is overbroad for several reasons. First of all, each of the subsections of Section 1, A, B, and C, is itself overbroad. Subsection 1A explicitly states the defendant can violate the statute by using or threatening force against the property of another person, whereas the guideline requires a force be used against the person of another. Subsection 1B, for similar reasons, is overbroad. That's the section that talks about depriving someone of a tool or implement. Again, the force that's used in that case can be used against the property of another. That's the Middleton case that we cite in our brief. A defendant was found guilty where he, quote, used physical force against the victim by taking and breaking her phone with the intent to prevent her from doing an act that she had the right to do, i.e., completing a 911 call. So even assuming that the force in that case was violent force, it was force used against property, against a phone. Why wasn't it the wrenching out of the victim's hand of her phone? Well, even if taking a phone – well, first of all, we don't know that it was in her hand. That's not clear from the facts of the case. As far as the opinion indicates, it could have been sitting on a table. It could have been on the couch. I don't think that fact is in the opinion. But even if it's in her hand and he takes it, I don't think the act of taking a phone just like that would be violent force. And in any event, even if in that case it was in her hand, there could be a case where it's sitting on a table and he picks it up and breaks it. And that would be force against property. So the modelton is the best we've got in terms of how the Nevada courts have applied this statute in a concrete situation that would be informative of our analysis? I think so, Your Honor. There is another case that I can provide to the court in a 28-day letter with similar facts where a phone was taken and broken and the court held that that was also coercion. But, yes, that's the closest to a real-world case. But even if there weren't a real-world case, this Court has held in Chavez-Solis v. Lynch and a line of cases going back to Grisel, the Ambant case from 2007, that if the text of the statute is plain on its face, the defendant does not need to point to a real-life case to show that the statute is overbroad. Subsection 1C is overbroad for two reasons. Again, it provides that someone is guilty if he, quote, attempts to intimidate the person by threats or force. So in that case, it's the person who has to be intimidated, but the intimidation can be affected by using force against property under the plain language of the statute. So if I threatened to use or used force against the victim's car or computer, that would qualify under 1C. And so for that reason, it's overbroad. It's also overbroad for a second reason, and that is that the word force in 1C includes de minimis force. The Nevada Supreme Court held in Hobbs v. State that the word force in the Battery Statute includes de minimis force, such as spitting on someone. And Nevada case law provides that, quote, when the same word is used in different statutes that are similar with respect to purpose and content, as these two statutes are, quote, the word will be used in the same sense unless the statute's context indicates otherwise. So consistent with that case law, this Court held in Miguel Mariano that the word force in the coercion statute includes de minimis force. Now, Miguel Mariano was an unpublished decision, but it uses the exact same logic that was applied in the published opinion this Court issued in United States v. Wuerl. In that case, this Court was construing the word force in the Washington riot statute. There was no Washington case law explaining what the word force in that statute meant. So this Court looked to Washington case law interpreting the word force in other statutes, found that in those other statutes, the word force meant de minimis force, and therefore imported that into the riot statute. So the word force in the riot statute includes de minimis force, and the statute was overbrought for that reason. So it's the exact same move here. Roberts. Can I ask you this? I'm not sure that you made this argument, but just looking at this statute, I wondered about this. The government's response, of course, is going to be that thanks for walking through A, B, and C. That's irrelevant for the most part because we're talking about 2A. And why wouldn't we just say that the physical force referenced in 2A necessarily has to include force used against property because 2A, we know, covers 1A, B, and C. And we know that 1A, of course, definitely includes actions against property. So why wouldn't we just do that, stop with all this? We don't need to go through all three and then we're just done. I think you can. That's actually exactly where I was going next, Your Honor, is that the word force in 2A can also include de minimis force, and as Your Honor said, it can be force against property. So you don't even need to get into A, B, and C. My point is that there are multiple routes to getting to the conclusion that the statute is overbroad. And one of them is the one that you just mentioned. Even if this Court disagrees with those two conclusions and decides to address whether the statute is divisible, this Court should conclude that it is indivisible, section 1 is indivisible as between A, B, and C. And it's important at the outset to remember that in Mathis, the Supreme Court said that before moving to the modified categorical approach, this Court must conclude with certainty that the statute is divisible. And there can be no certainty that this statute is divisible. The government cites to Perez v. State, which I think is the only case arguably on point on the divisibility question. And in that case, the Nevada Supreme Court said, quote, coercion includes elements of force or deprivation and the intent to compel another to act or not act. And the government reads that to mean that force or deprivation are separate elements. But I think a more natural reading of that language is the Court is saying coercion includes elements of, one, force or deprivation, and, two, the intent to compel another. And under that reading, force or deprivation is a single element that can be satisfied in multiple ways, through force, which comes from subsection 1C, or deprivation, which comes from subsection 1B. And if so, the statute is indivisible because those are means, either one of which satisfies a single element. The text of the statute itself doesn't really provide any clues about divisibility. We do know that sections, subsections 1A, B, and C do not carry different punishments, so one of the key indicators of divisibility for Mathis is not present in this case. And then finally, moving to the record documents, the government concedes that in this case, Mr. Edling's information listed both subsections 1B and 1C in a single count of an information, which Mathis indicates is all the proof you need that the statute is indivisible. And again, we don't need to address any of what you just said if we adopted the reading of 2A that I mentioned, right? That's correct, Your Honor. So maybe in the minute or whatever you're going to take, can you talk about robbery? I would love to. Yes, thank you, Your Honor. And assault with a deadly weapon? Yes, Your Honor. So as this Court knows, in Harris, this Court held that robbery is categorically a crime of violence because all conduct described by the statute is either generic has been amended. It now means, quote, obtaining something of value from another by the wrongful use of, A, force, B, fear of physical injury, or C, threat of physical injury. And the key words there are physical injury. In 21st century English, the word injury refers to harms to people, not harms to property. And so you can no longer commit extortion by threatening harm against property under the new definition. So a defendant who committed Nevada robbery by threatening force against property would have engaged in conduct that qualifies as neither generic robbery nor generic extortion. And in addition to the plain meaning of the word injury — No, no, no. I thought you're talking — you're relying on the special definition of extortion that now exists under the post-2016 guidelines. Correct. It's not — that is not generic extortion. I'm sorry. That's what I meant by generic, Your Honor. I apologize. The guideline's definition of extortion. Okay. And if you look to other places in the guidelines where the word injury is used, it clearly refers to harms to property, not harms to people. So, for example, in Guideline 5K2.2, which we cite in our 28J letter regarding the O'Connor case, it says, when the victim suffers a major permanent disability and when such injury was intentionally inflicted, a substantial departure may be appropriate. So it's talking about disability to a victim and uses the word injury that clearly means injury to a person. Or 5K1.12, ordinarily coercion will be sufficiently serious to warrant departure only when it involves a threat of physical injury or substantial damage to property. So, counsel, we would have to overrule some of our precedent to adopt your argument, correct? I don't think so, Your Honor. Why not? Because Veserell Lopez and Harris relied on the old definition of extortion. That definition is no longer the definition that this Court uses, the guidelines used for extortion. But the guidelines didn't — oftentimes when the guidelines intend to — to speak to a particular case and clarify the meaning of the guideline in — in relation to that case, it says so. But the — the amendments did not mention any of our authority or purport to clarify or tell us why it was incorrect. So why should we say by implication that our cases are no longer good law? So — so two reasons, Your Honor. First, in the amendment, proposed amendment to the guidelines that contain this amendment, the Sentencing Commission wrote, quote, the definition of extortion in the proposed amendment requires the threat to be a threat of physical injury against the person. So it's right there, plain as day. It didn't exclude property, though, explicitly. Well, it doesn't say against the person and not against property, but it just says against the person. So that's in the legislative history. But I don't think you even need to get to the history because the text of the guideline is clear on its face. It uses the word injury, which elsewhere in the guidelines clearly denotes harms to people. And I think perhaps the most telling example of that, and I apologize, this example is not quoted in our briefing, and that's Guideline 2B3.2, which is the guideline for when a defendant commits the Federal crime of extortion. And that guideline is called, quote, extortion by force or threat of injury or serious damage. So clearly injury and damage are two different things. And then it provides in the text of the guideline, if the offense involved preparation to carry out a threat of death, serious bodily injury, kidnapping, product tampering, or damage to a computer system enhanced by three levels. So clearly injury and damage to property in the context of extortion in the guidelines are two different things. Counsel, are you familiar with the Tenth Circuit's decision, the United States v. Conner? Yes, Your Honor. Would you agree that in that case the Tenth Circuit said that even after the guideline was amended, the definition remained ambiguous? So I respectfully disagree with that part of that opinion. But the case does say that. Oh, yes. And it says that a reasonable case can be made that guidelines extortion still encompasses threats to property. Doesn't that undermine your argument? I don't think so, Your Honor. Because the evidence that the Tenth Circuit used to show that extortion could still include threats to property was mostly nontextual evidence. For example, the fact that historically extortion statutes were used to plug a hole left by the fact that robbery didn't cover threats to property. The only textual clue the Tenth Circuit used to say that extortion could cover harms to property is that in 4B1.2 it specified that the use of force must be against a person as opposed to a property, and in the definition of extortion it didn't specify. But I don't think that's a persuasive argument, because the word force inherently can be used against either people or property. And so if you want to limit it to just force against property, you have to specify, because force in a vacuum could mean force against a person or against, you know, this table. Injury is different. The word injury by itself in modern English means harms to people. And so you don't have to specify that it's harms to people as opposed to harms to property. But even if this Court disagrees and finds it's ambiguous, then this Court can still do what the Tenth Circuit did in O'Connor, which is apply the rule of lenity and give the defendant the benefit of the doubt and hold that extortion only encompasses harms to people and not property. Thank you, counsel. Thank you, Your Honor. Ms. White. Good morning. Good morning, counsel. May it please the Court. Elizabeth White for the United States. When we think about extortion, you know, what is extortion? The classic, maybe the quintessential example of extortion in American culture is the mafia protection racket, right? The enforcer goes into the store and says, hey, nice shop you have here. Boy, wouldn't it be a shame if something happened to it. Pay me money or I will burn your store to the ground. That's what we think of as extortion. As the Tenth Circuit noted in O'Connor, a lot of States enacted extortion statutes because their robbery statutes didn't extend to threats of damage or injury to property. So if the Sentencing Commission had intended in adopting this narrower definition of extortion, if the commission had intended to do a complete 180 and exclude from its definition of extortion the thing that we think of as the essence of extortion, it would have said so. And it didn't. And it didn't mean to. And the reason we know that that's not what it meant to do is because it told us exactly what it was doing. What it was doing was basically distinguishing the Supreme Court's decision in Nardello. In the amendment, it gives the reason for the amendment. The reason for the amendment is that under existing case law, it cites the Supreme Court in Nardello, which had said that this idea of nonviolent, nonphysical injuries like blackmail, Nardello was a blackmail case, and they said consistent with the commission's goal of focusing on the most dangerous offenders, we are going to narrow this definition so that what we're talking about is fear or threats of physical injury as opposed to nonviolent threats such as injury to reputation. So the sentencing commission said exactly what it was. Yes, it did narrow the definition of extortion, coincidentally probably to the ultimate effect that no extortion conviction counts anymore because they'd mostly be overbroad. But as to what it was that they were narrowing, they were very explicit that what they were narrowing is they were eliminating nonviolent threats such as injury to reputation. Pay me money or I will burn down your store is a violent threat. That is a threat of physical injury. This idea that the word injury can't possibly mean injury to property, that just goes counter to what it is that we're talking about here. We're here interpreting the Nevada robbery statute, which defines robbery as taking someone's personal property by means of fear of injury to his person or property, right? That is the same as the California robbery definition in Becerra-Lopez. California robbery is defined in Section 211, and then 212 defines fear, which says fear of unlawful injury to the person or property of the person being robbed. And all due respect to the Tenth Circuit, they were interpreting the Hobbs Act robbery statute. The Hobbs Act robbery says the exact same thing, robbery by means of fear to his person or property. So the legal use of the term injury to talk about injury to property is very common. It's not at all, I mean, you know, maybe they should have said injury to persons or damage to property. I mean, you know, that would be another way to say it. But this idea of ---- Roberts, I mean, I think you make a compelling case for why there are good arguments on the other side, as the Tenth Circuit recognized. But I guess I don't see how you get around the rule of lenity. Do you think it doesn't apply at all here to the guidelines, or is it just you think it's so crystal clear that there's no room for the rule of lenity? I actually think that it's really clear. I mean, I think that by citing Nardello, in the initial call, they talked ---- Opposing Counsel talked about the initial ---- he called it legislative history. In fact, what it was was the call for comments when they put out the proposed and they say, here's what we're thinking about doing, give us your comments. The first sentence, which he did not quote, said, extortion has been defined in case law as including nonviolent threats, such as threats to reveal embarrassing personal information. You know, we're thinking about excluding that. And they did say requiring physical threats to give the person ---- Roberts, that seems to me you were quite dismissive of that, I think, in your brief. But it seems to me that's at least a small clue. I mean, I grant you it's not dispositive by any means, but it's a clue as to what at least the drafters of this amendment were thinking, isn't it? Exactly. I mean, I think that they were thinking of excluding threats, nonviolent threats, such as threats to reveal embarrassing personal information. Yeah, but read the next sentence. Yeah. Well, in the next sentence, I mean, actually, it kind of depends on where you put the emphasis on, as you're reading that sentence. That's my point, is that I think you battle quite well to a draw here. Okay. Yeah. And then we're left with there are good arguments on both sides, and why wouldn't the rule of lenity control? I would say, first of all, respectfully, I think that this is a stronger argument. But also, I don't know that you can use the rule of lenity to overturn precedent. I mean, that a panel can say, oh, well, it's ambiguous, so Becerra-Lopez is no longer good law. We're not — but wait, wait, wait. We're not overturning anything. The — whatever our prior case has said about the pre-2016 guidelines still controls. We're just saying that there's now a new provision in place that we're called upon for the first time in our circuit, at least, to interpret it, and here's what it means going forward. Why would we have to overrule anything? Well, I think that the decision — I think the analysis would be that if there are good arguments to be made on both sides, then maybe the 2016 guidelines changed the game. Right. That's all that your opponent is asking for. And so, therefore, Becerra-Lopez is no longer good law because maybe? I guess — Why is it no longer good law? I don't understand. Well, I mean, I think that the — you'd have to make a decision that this definition of extortion excludes injury to property. You know, and right there, I'd say it doesn't. But if — you know, then — I mean, I think then you get into — there's — wow. I hadn't actually considered that. I know that in the Tenth Circuit, this issue of the rule of lenity hadn't been briefed at all, and obviously we haven't briefed it here. It wasn't mentioned in the opening or reply brief. There are, of course, arguments that the rule of lenity no longer applies to the Guidelines post-Beckles, but that hasn't been briefed at all. Okay. That's what I was trying to get you to say before. So do you dispute whether, just as a general principle, the rule of lenity even applies to the Guidelines? I think so. I mean, Beckles said that the Guidelines aren't subject to constitutional vagueness challenges. I would want to — I would want an opportunity to do some research and briefing on that. That hasn't — But the Tenth Circuit had some case law that said the rule of lenity applied to the Guidelines, and I'm not sure of the status of our case law. I just — and I don't know if any of that is post-Beckles. I mean, I really do think that — you know, obviously, as you know, the Department of Justice rule clause in the — in 4B1.2 was unconstitutionally vague after Johnson. And the Supreme Court said, why would you say that? You know, the Constitution — the vagueness doesn't apply to that. And so I don't know if any — I know — I believe that there are Ninth Circuit cases that have — that have applied the rule of lenity in Guidelines, and — And I think that's right. Obviously, the Tenth Circuit did, but I don't know if any of those are post-Beckles and whether that has been considered. So, but — But do you want to get to coercion? You've only got two minutes left. Oh, yes. Real quickly before I do, and I know that Judge Rawlinson had asked, the assault with a deadly weapon, I mean, there is actually binding. Camacho-Cruz is very clear, and to the extent that this — this idea that you can put someone in fear of bodily harm without using force capable of causing physical injury, you know, this Court rejected that recently in Gutierrez. So I think we don't need to say anything about that. The coercion statute, the — this — this statute is — is somewhat of a mess. And, I mean, it's not a mess. It does what Nevada wants it to do. And I just — someone should probably send it to Justice Kagan, who said, oh, this will be easy in all cases, right? You know, you've got three subsections, which may or may not be divisible. But at the end of the day, you've got misdemeanor and — and felony. And I — I think that — that my — my one point is, you know, we acknowledge that the — that this Court in an unpublished decision recently — I don't know how recently — found that — found that the de minimis force part just sort of invalidated the whole thing, and — and, you know, it's not the government's practice to dispute unpublished decisions. But in this case, we really do think that the — that panel got that wrong in how they — how they interpreted Duenas-Alvarez. I mean, what they said is, if the statute says it, then you don't have to — then — then you don't actually have to find a real-world example. And this Court has said that before. And that's fine when you're talking about the burglary statute that says breaking into a car. You know, it's — there's a realistic possibility. If that's what the statute says, that's what the statute says. But when you're talking about de minimis force, you have to ask yourself, okay, how would that work? How would someone compel someone to do something that they're in — that they don't want to do or keep them from doing something that they want to do by using de minimis force? I just — I don't think there's an example of that in the law, and I don't think that once you're talking about interpreting the words in the statute and then, you know, coming up with this hypothetical, I honestly cannot come up with a hypothetical where someone could compel you to do something that you don't want to do by lightly touching you on the — on the wrist. Roberts. Could I indulge — if the Chief Judge will indulge me, just one more question. I just — maybe you're right about that, but what about the reading of 2A that I proposed, that physical force, we would have to know, includes force against property, because otherwise it couldn't cover the 1A crime? Yeah. And that is — that is the hardest part, obviously, for the government in this case. And again, I mean, the only thing I would say there, again, is I don't think you can — that you can find a case. I mean, maybe — maybe you just say that's what it is, and therefore it's overbroad, and then we're done. I do think that — that Middleton doesn't say — I mean, I don't read Middleton the way the defense does. I think that it was the — it was the grabbing of the phone, and it was actually grabbing the phone from her hand. That's what the decision says. The smashing of the phone was actually the evidence of the specific intent to keep her from calling 911, right? I mean, I think that if you read that decision, it's — it is reasonable, and that's the way I read it. But at the end of the day — But just help me, because none of that matters if, again, we were to look at physical force as encompassing force against property. Do you have a response to that, or are you basically just throwing up your hands and saying, hey, the thing says what it says? I'm basically throwing up my hands and saying it says what it says. So what difference does it make in terms of the guideline range if the coercion count goes up? It would lower his — if the — if — assuming that we get the robbery and the assault with a deadly weapon, all it would — it would lower his criminal history category from 6 to 5, because — because he — the coercion and the assault were the same offense, so he got four points for that, because you get one for the extra crime of violence. And if coercion's not a crime of violence, he'd have 12 criminal history points instead of 13. But he'd still have — assuming that we get — if we — if we get the robbery and the assault with a deadly weapon, it wouldn't change the offense level. It would just change the criminal history category by one. And so the range would be what? I don't — I guess the question is, does it make a difference on the range? Yeah. Oh, yeah. No, going from criminal history, I think he ended up 7796, so it would probably be something along the lines of 70 to 87, I think, is the next lower, but that's just a guess. I guess. Okay. Thanks so much. We'll give you two minutes for a vote. Thank you, Your Honor. Very briefly, I'd just like to make two points. First is the government points to the Nevada robbery statute and the California robbery statute where the word injury is used to describe harms to property. And that's true, but the text this Court has to interpret is the Federal sentencing guidelines. And if you do a — a Control-F, find all for the word injury in the guidelines as I have, you'll find that in every case the guidelines use that word, it refers clearly to harms to people and not harms to property. So that includes the ones I cited already, but also 2J1.2, 2C1.1, and 2J1.3. In each case, the word injury clearly refers to harms to people, and it's a cardinal rule of interpretation that when the same word appears in different places in the same text, it presumptively means the same thing. The second is that with respect to coercion, the government is saying you can't commit coercion by lightly tapping someone on the shoulder. But the Supreme Court held in the Castleman case that pushing, scratching, throwing, twisting, hitting, slapping, shoving, grabbing, and pinching would all not be violent force in a non-domestic context. And I think it's clearly possible to commit coercion through one of those actions by using physical force that is not violent force. So unless the Court has any more questions, I'll submit it there. Thank you, Counsel. Thank you, both of your arguments. Thank you. And the case just heard will be submitted for decision.
judges: Thomas, Rawlinson, Watford